D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
Fax: (510) 849-6141
vbaranetsky@revealnews.org

Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and AURA BOGADO,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Defendant. | **CASE NO. ______________**<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF** |

## INTRODUCTION

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief. The Center for Investigative Reporting ("CIR") and Aura Bogado (collectively "Plaintiffs") seek processing and release of agency records requested from Defendant, the United States Department of Health and Human Services ("HHS").

2. Between July 10, 2019 and December 17, 2019, Plaintiffs submitted five FOIA requests ("the Requests") to HHS's Administration for Children and Families ("ACF") seeking disclosure of "electronic entries generated by the Office of Refugee Resettlement" regarding "Unaccompanied Alien Children" currently or formerly in federal custody.

3. Between July 12, 2019 and January 6, 2020, HHS acknowledged each of the Requests

and assigned each a tracking number, but has to date failed to issue a single final determination or even provide an estimated date for a final determination for *any* of the Requests.

4. Defendant has failed to comply with FOIA's statutory deadlines by not issuing a final determination as to any of the Requests, and is in violation of FOIA.

5. The requested records are of significant public interest because they relate to unaccompanied minors held in custody by the Office of Refugee Resettlement ("ORR"), a topic that has been the subject of intense public scrutiny in recent years.

6. The requested records are of particular interest to Plaintiffs because they are members of the news media and have reported at length on federal regulations and treatment of unaccompanied minors in federal custody.

7. Plaintiffs now ask the Court for an injunction requiring HHS to promptly release the withheld records.

## JURISDICTION

8. The Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1436, and 5 U.S.C. §§ 701–706.

## VENUE AND INTRADISTRICT ASSIGNMENT

9. Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402. Plaintiff CIR has its principal place of business in this district. Plaintiff Aura Bogado is domiciled in this district.

10. Assignment to the Oakland Division is proper pursuant to Local Rules 3-2(c) and (d) because a substantial portion of the events giving rise to this action occurred in Alameda County, where CIR's principal place of business is located and where most actions in this case occurred.

## PARTIES

11. Plaintiff CIR publishes *Reveal*, an online news site, at revealnews.org, and *Reveal*, a weekly public radio show with over 3 million listeners. Founded in 1977 as the first non-profit investigative news organization, CIR has received multiple awards for its reporting. CIR is a non-profit established under the laws of the State of California, with its primary office in Emeryville, California.

12. Plaintiff Aura Bogado is a staff reporter for *Reveal* and an employee of CIR.

13. Defendant HHS is a department of the executive branch of the U.S. government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). ACF is a component of HHS. ORR is an office within ACF. HHS has its headquarters in Washington, D.C., and regional offices all over the country, including in San Francisco, California. ACF also has a regional office in San Francisco, California.

## FACTUAL BACKGROUND

14. By law, HHS is responsible for the care of unaccompanied minor children ("UAC"), defined as children under 18 years of age who do not have lawful immigration status in the United States and have no legal guardian in the United States. *See* 6 U.S.C. §§ 279(a), (g)(2). ACF is the component of HHS responsible for "promot[ing] the economic and social well-being of families, children, individuals and communities." ACF, *What We Do*, http://www.acf.hhs.gov/about/what-we-do. ORR is the federal office within ACF that houses and cares for unaccompanied children detained by the United States. ORR, *About UAC Program*, June 15, 2018, https://www.acf.hhs.gov/orr/programs/ucs/about [https://bit.ly/2GQtM3K].

15. Unaccompanied alien children are transferred to ORR's care, or "referred" to the agency, after they are apprehended by the U.S. Department of Homeland Security, Immigrations and Customs Enforcement, or Customs and Border Protection officials. *Id.*; *see also* ORR, *Children*

*Entering the United States Unaccompanied: Section 2*, Jan. 30, 2015, https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.2 [https://bit.ly/2JYxZZs]. After UAC are transferred, ORR temporarily houses these children in a network of various facilities until ORR can place the minor with a family member or sponsor in the United States. *Id.*

16. ORR's responsibilities to care for UAC are enumerated in the Homeland Security Act of 2002. HHS, *Fact Sheet: Unaccompanied Alien Children (UAC) Program*, Oct. 31, 2019, https://www.hhs.gov/sites/default/files/unaccompanied-alien-children-program-fact-sheet-10-2019.pdf. Its responsibilities were further refined with the passage of the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPR"), which codified parts of the *Flores* Settlement Agreement, a 1997 court settlement resulting from a landmark litigation with the federal government, which sets out the national standards for the government's treatment and placement of minors. *See Fact Sheet: The Flores Settlement and Family Incarceration: A Brief History and Next Steps*, HUM. RTS. FIRST, Oct. 20, 2018, https://www.humanrightsfirst.org/resource/flores-settlement-and-family-incarceration-brief-history-and-next-steps [https://bit.ly/2uEbCyo].

17. Once a UAC has entered ORR custody, the minor may only leave upon release to a sponsor, when they "age out" into the adult immigration custody system by turning 18, or "when their immigration status is resolved." DEP'T OF HEALTH & HUMAN SERVS., OFFICE OF INSPECTOR GEN., OEI-09-18-00431, CARE PROVIDER FACILITIES DESCRIBED CHALLENGES ADDRESSING MENTAL HEALTH NEEDS OF CHILDREN IN HHS CUSTODY (Sept. 2019) at 1, https://oig.hhs.gov/oei/reports/oei-09-18-00431.pdf. ORR immediately begins the process of seeking a "suitable sponsor" to whom the child may be released while their immigration court proceedings are pending. *Id.*

18. In the meantime, under ORR standards, the agency's general practice is to place these

unaccompanied minors "within the ORR funded care provider network." ORR, *Children Entering the United States Unaccompanied*. ORR operates a variety of facilities including shelter facilities and residential treatment centers ("RTCs"), facilities "that provide therapeutic care and services that can be customized to individual needs." HHS OIG, CHALLENGES ADDRESSING MENTAL HEALTH NEEDS at 2.

19. Since being delegated responsibility for the care of UAC in 2002, more than 407,000 children have entered and been released from ORR care. HHS, *Fact Sheet: Unaccompanied Alien Children (UAC) Program*, Oct. 31, 2019, https://www.hhs.gov/sites/default/files/unaccompanied-alien-children-program-fact-sheet-10-2019.pdf. From 2002 to 2011, "fewer than 8,000 children were served annually." *Id.*

20. Beginning in 2012, the number of children referred to ORR began to increase dramatically: 13,625 children were referred in 2012, *id*., a number which rose steadily before reaching an all-time high of 69,488 UAC referred to ORR in 2019. ORR, *Facts and Data*, https://www.acf.hhs.gov/orr/about/ucs/facts-and-data. In part, the increase was caused by the Trump Administration's now-defunct practice of separating families apprehended at the U.S.-Mexico border. Ron Nixon, *Trump Officials Urge End of Time Limits on Detaining Migrant Children*, N.Y. TIMES, Sept. 18, 2018, http://www.nytimes.com/2018/09/18/us/politics/migrant-children-detention-trump.html.

21. The average length of stay for children in ORR custody has also increased in recent years.[1] According to former HHS Deputy Assistant Secretary for Policy at ACF, Maria Cancian,

[1] HHS does not publish historical data from before 2018 for the average length of stay for UAC in ORR custody, or other length of stay figures such as median length of stay or range of lengths of stay. As of October 15, 2018, the ACLU, using publicly available data and data released to the organization, calculated that the *median* length of stay in ORR care at the time was 154 days, more than five months. ACLU, *Family Separation by the Numbers*, Oct. 2018, https://www.aclu.org/issues/immigrants-rights/immigrants-rights-and-detention/family-separation.

"[i]n the Obama Administration, time in ORR care was approximately a month, on average." Alexandra Schwartz, *The Office of Refugee Resettlement is Totally Unprepared for the Thousands of Immigrant Children Now in its Care*, NEW YORKER, June 21, 2018, https://www.newyorker.com/news/news-desk/the-office-of-refugee-resettlement-is-completely-unprepared-for-the-thousands-of-immigrant-children-now-in-its-care. In contrast, for 2019 overall, the average length of stay in ORR custody was 66 days. ORR, *Facts and Data*.

22. Between May 2018 and November 2018, the average length of stay in ORR care jumped from 58 days to a high of 93 days, before declining to 48 days in April 2019. HHS OIG, CHALLENGES ADDRESSING MENTAL HEALTH NEEDS at 12. The practice of family separation contributed to an increase in the average length of stay. *Id.*

23. A September 2019 report by HHS's Office of the Inspector General ("OIG") on UAC in ORR's care revealed the adverse psychological impacts of longer stays on UAC. *Id.* (stating that "children with longer stays experienced more stress, anxiety, and behavioral issues.").

24. The HHS OIG's report also found that longer stays resulted in overcrowding as ORR had a limited number of beds available and staff could not meet the needs of the increasing numbers of UAC entering its care in 2018. *Id.* at 15. Facilities reported that children were sometimes transferred "to out-of-network RTC providers with which ORR contracts[.]" *Id.*

25. Reporting on issues related to the care of UAC has resulted in public debate and led to policy changes. *See, e.g.*, Manny Fernandez, *Inside the Former Walmart that is Now a Shelter for Almost 1,500 Migrant Children*, N.Y. TIMES, June 14, 2018, https://www.nytimes.com/2018/06/14/us/family-separation-migrant-children-detention.html (reporting on a converted retail store serving as the largest facility housing UAC in the country as well as planned "temporary tent housing . . . near the border station in Tornillo, Tex[as]"); Matthew Haag, *Thousands of Immigrant Children Said They Were Sexually Abused in U.S. Detention Centers,*

*Report Says*, N.Y. TIMES, Feb. 27, 2019, https://www.nytimes.com/2019/02/27/us/immigrant-children-sexual-abuse.html (discussing Department of Justice report disclosing that ORR had received "4,556 allegations of sexual abuse or sexual harassment" from UAC in its care between October 2014 and July 2018); Michael Shear et al., *Trump Retreats on Separating Families, but Thousands May Remain Apart*, N.Y. TIMES, June 20, 2018, https://www.nytimes.com/2018/06/20/us/politics/trump-immigration-children-executive-order.html (reporting that widespread public outcry ultimately led the federal government to change its family separation practice).

26. Plaintiffs have reported on the treatment of UAC in ORR custody, exposing an array of violations of federal law and otherwise improper practices. Aura Bogado, *The U.S. is quietly opening shelters for babies and young kids. One has 12 children and no mothers*, REVEAL, July 13, 2019, https://revealnews.org/article/the-us-is-quietly-opening-shelters-for-babies-and-young-kids-one-has-12-children-and-no-mothers/; Aura Bogado, *Leaked immigration court official's directive could violate rules that protect families from deportation*, REVEAL, Aug. 19, 2019, https://www.revealnews.org/article/leaked-immigration-court-officials-directive-could-violate-rules-that-protect-families-from-deportation/; Aura Bogado & Patrick Michels, *Troubled youth detention firm seeks to open migrant child shelter in Los Angeles*, REVEAL, Nov. 21, 2019, https://revealnews.org/article/troubled-youth-detention-firm-seeks-to-open-migrant-child-shelter-in-los-angeles/.

27. ORR records regarding confinement of UAC are of tremendous public interest, and Plaintiffs have an abiding interest in obtaining them in order to report further on a matter of grave public concern.

//

//

## PROCEDURAL BACKGROUND

### FIRST REQUEST

28. On July 10, 2019, Ms. Bogado submitted a FOIA request to ACF on behalf of CIR seeking ORR records pertaining to electronic entries about UAC ("First Request"). A true and correct copy of the First Request is attached as Exhibit A.

29. Specifically, Ms. Bogado sought "copies of all [Significant] Incident Reports and copies of all Emergency [Significant] Incident reports generated in the ORR Portal." *Id.*[2] She added that the "associated information for [responsive] records . . . should include, but are not limited to, age, home country, admit date, discharge date, discharge reason, and the name(s) of the program(s) the UAC was placed in." *Id.*

30. Plaintiffs also sought a waiver of search and review fees on the grounds that the Ms. Bogado qualified as a "representative of the news media" and that the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii).

31. On July 12, 2019, Ms. Bogado received an email response from ACF acknowledging the First Request and assigning it tracking number 19-F-0353. A true and correct copy of that email is attached as Exhibit B. The email stated that the request had "been place[d] in the complex request que[u]e," and also invited Ms. Bogado to narrow the First Request, stating that the request "is seeking an extremely voluminous amount of information" as it requested "10 years of SIRs." *Id.*

32. On December 4, 2019, after unsuccessfully attempting to contact ACF's FOIA office by phone and email regarding possible narrowing of the First Request, Ms. Bogado sent an email to ACF and proposed to narrow her request to "SIRs for two categories: Suicidal Ideation and Suicide Attempt/Gestures." On December 10, 2019, after again not hearing back from ACF, Ms. Bogado

[2] The Request asked for "Special Incident Reports," but the correct title is "Significant Incident Reports."

added that her request could be further narrowed to the time period from 2012 to today. True and correct copies of these emails are attached as Exhibit C.

33. On December 12, 2019, Ms. Bogado received an email from a different ACF FOIA officer who told her that her request was on hold pending narrowing of the request. Ms. Bogado replied by repeating her proposal for narrowing the First Request laid out in Exhibit C. A true and correct copy of this exchange is attached as Exhibit D.

34. Plaintiffs, including CIR's general counsel, contacted ACF three more times requesting an estimated date of completion. True and correct copies of these emails are attached as Exhibit E. To date, plaintiffs have received no further correspondence from ACF regarding the First Request.

35. More than 20 working days have passed since Plaintiffs submitted the First Request on July 10, 2019.

36. ACF has failed to comply with FOIA, 5 U.S.C. § 552(a)(6)(A)(i), which requires that an agency make a determination with respect to a request within 20 business days. Plaintiffs now seek injunctive relief.

## SECOND REQUEST

37. On November 27, 2019, Ms. Bogado submitted a FOIA request to ACF on behalf of CIR seeking ORR records pertaining to electronic entries about UAC ("Second Request"). A true and correct copy of the Second Request is attached as Exhibit F.

38. Specifically, Ms. Bogado sought "a spreadsheet document known as the 'RTC referral list'" and "associated communications between . . . ORR, General Dynamics Information Technology, individual shelters, and out-of-network facilities about transfers or possible transfers [of UAC]." *Id.* She added that the "associated information for [responsive] records . . . should include, but are not limited to, age, home country, admit date, discharge date, discharge reason, and

the name(s) of the program(s) the UAC was placed in." *Id.*

39. Plaintiffs also sought a waiver of search and review fees on the grounds that the Ms. Bogado qualified as a "representative of the news media" and that the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii).

40. On January 8, 2020, Ms. Bogado sent a second email to ACF regarding the Second Request, which was assigned tracking number 20-F-0067, stating that she had "submitted the request six weeks ago" and requesting an estimated date of delivery. A true and correct copy of that email is attached as Exhibit G.

41. On January 9, 2020, Ms. Bogado received an email from ACF stating that the agency "currently ha[s] a backlog of about 740 requests" and was "unable to give an accurate estimate." A true and correct copy of that email is attached as Exhibit H. The email added that the officer had not "received the spreadsheet from the program office yet" but that, if the document was only a few pages, "it should [not] take long to review." *Id.* To date, plaintiffs have received no further correspondence from ACF regarding the Second Request.

42. More than 20 working days have passed since Plaintiffs submitted the Second Request on November 27, 2019.

43. ACF has failed to comply with FOIA, 5 U.S.C. § 552(a)(6)(A)(i), which requires that an agency make a determination with respect to a request within 20 business days. Plaintiffs now seek injunctive relief.

<u>THIRD REQUEST</u>

44. On December 2, 2019, Ms. Bogado submitted a FOIA request to ACF on behalf of CIR seeking ORR records pertaining to electronic entries about UAC ("Third Request"). A true and correct copy of the Third Request is attached as Exhibit I.

45. Specifically, Ms. Bogado sought "records of lengths of stay for every UAC who has

been in ORR custody for more than 100 days" for the period from January 1, 2012 through the present. *Id.* She added that records "should include UAC who have been released, aged out, died, or are no longer in the custody of ORR, as well as those currently in ORR custody." *Id.*

46. Plaintiffs also sought a waiver of search and review fees on the grounds that the Ms. Bogado qualified as a "representative of the news media" and that the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii).

47. On December 12, 2019, Ms. Bogado received an email response from ACF acknowledging the Third Request and assigning it tracking number 20-F-0069. A true and correct copy of that email is attached as Exhibit J. The email added that because of the "wide timeframe" for these records, "results will be voluminous" and the request would likely be "put in the 'complex' queue, which will make the process time even longer." *Id.* The email explained that ACF had "approximately 700 open FOIA requests right now" and as such the agency was "unable to process requests as quickly as we'd like." *Id.*

48. On December 13, 2019, Ms. Bogado emailed ACF and requested that the agency "be more specific" about what her request being placed in the "complex queue" meant, as well as requesting an approximate release date. On December 17, 2019, after not hearing back from ACF, Ms. Bogado again contacted the agency to request an approximate release date. On December 18, 2019, ACF responded in an email, stating that it would not "be able to estimate how long it will take to review the pages until [it] receive[s] the search results from the program office" which normally takes "about a week," but that it could not provide an estimate as to "how long it will be until we get to this particular request." True and correct copies of these emails are attached as Exhibit K. Plaintiffs have received no further correspondence from ACF regarding the Third Request.

49. More than 20 working days have passed since Plaintiffs submitted the Third Request on December 2, 2019.

50. ACF has failed to comply with FOIA, 5 U.S.C. § 552(a)(6)(A)(i), which requires that an agency make a determination with respect to a request within 20 business days. Plaintiffs now seek injunctive relief.

FOURTH REQUEST

51. On December 6, 2019, Ms. Bogado submitted a FOIA request to ACF on behalf of CIR seeking ORR records pertaining to electronic entries about UAC ("Fourth Request"). A true and correct copy of the Fourth Request is attached as Exhibit L.

52. Specifically, Ms. Bogado sought "complete records of UAC transfers while in ORR custody." *Id.* She added that the records should include "every [UAC] transfer while in custody" and a "unique identifier for every UAC and the name or every originating and ending point of transfer." *Id.* Ms. Bogado further specified that the records should span the time period from January 1, 2012 through the present.

53. Plaintiffs also sought a waiver of search and review fees on the grounds that the Ms. Bogado qualified as a "representative of the news media" and that the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii).

54. On December 6, 2019, Ms. Bogado received an email response from ACF acknowledging the Fourth Request and assigning it tracking number 20-F-0071. A true and correct copy of that email is attached as Exhibit M.

55. On December 10, 2019; December 13, 2019; and December 17, 2019, Ms. Bogado requested an estimated delivery date for the records. True and correct copies of these emails are attached as Exhibit N. Plaintiffs have received no further correspondence from ACF regarding the Fourth Request.

56. More than 20 working days have passed since Plaintiffs submitted the Fourth Request on December 6, 2019.

57. ACF has failed to comply with FOIA, 5 U.S.C. § 552(a)(6)(A)(i), which requires that an agency make a determination with respect to a request within 20 business days. Plaintiffs now seek injunctive relief.

FIFTH REQUEST

58. On December 17, 2019, Ms. Bogado submitted a FOIA request to ACF on behalf of CIR seeking ORR records pertaining to electronic entries about UAC ("Fifth Request"). A true and correct copy of the Fifth Request is attached as Exhibit O.

59. Specifically, Ms. Bogado sought "all records that disclose the care of UAC who've been in ORR custody for a period of five years or longer." *Id.* Ms. Bogado specified that the records should span the time period from January 1, 2002 through the present. *Id.*

60. Plaintiffs also sought a waiver of search and review fees on the grounds that the Ms. Bogado qualified as a "representative of the news media" and that the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii).

61. On January 6, 2020, Ms. Bogado received an email response from ACF acknowledging the Fifth Request, which was assigned tracking number 20-F-0083, and requesting that she "more clearly describe the type of records [she] seek[s]". A true and correct copy of that email is attached as Exhibit P.

62. That same day, Ms. Bogado sent a response to ACF, stating that production could begin "with a spreadsheet that lists the number of UAC[] who've been in ORR custody longer than 5 years, along with unique information like country of origin, age, gender, what programs they've been in, and the corresponding dates." A true and correct copy of that email is attached as Exhibit Q.

63. On January 9, 2020, after ACF failed to respond to Ms. Bogado's January 6 email, Ms. Bogado proposed that ACF instead release "the entry and discharge dates for all UAC who've

been in ORR custody, as well as the entry dates for UAC still in OR custody" as this would avoid ACF "having to delineate which UAC have or had been in custody for more than five years." A true and correct copy of that email is attached as Exhibit R.

64. That same day, ACF replied, stating across two emails that it would "see if the program office has compiled that yet and uploaded it" and "pass this email along to the program office pulling the records." True and correct copies of these emails are attached as Exhibit S. Plaintiffs have received no further correspondence from ACF regarding the Fifth Request.

65. More than 20 working days have passed since Plaintiffs submitted the Fifth Request on December 17, 2019.

66. ACF has failed to comply with FOIA, 5 U.S.C. § 552(a)(6)(A)(i), which requires that an agency make a determination with respect to a request within 20 business days. Plaintiffs now seek injunctive relief.

## CAUSE OF ACTION

### Violation of Freedom of Information Act

67. Plaintiffs repeat and reallege paragraphs 1-66.

68. ACF is subject to FOIA and must therefore release in response to a FOIA request any disclosable records in its possession and provide a lawful reason for withholding any materials as to which it is claiming an exemption.

69. ACF has failed to act on Plaintiffs' request within the 20 business days required by FOIA. *See* 5 U.S.C. § 552(a)(6)(A)(i). Accordingly, Plaintiffs are deemed to have exhausted their administrative remedies under FOIA.

70. Plaintiffs are entitled to declaratory and injunctive relief compelling the release and disclosure of the requested records.

**REQUESTED RELIEF**

WHEREFORE, Plaintiffs prays that this Court:

1. Declare that Defendant HHS violated FOIA by failing to respond to Plaintiffs' requests within the statutory deadline, failing to provide requested records in response to Plaintiffs' FOIA request, and failing to notify Plaintiffs of a final determination as to the request;

2. Declare that the documents sought by their FOIA request, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

3. Order Defendant HHS to expeditiously provide the requested documents to Plaintiffs within 20 business days of the Court's order;

4. Award Plaintiffs the costs of this proceeding, including reasonable attorneys' fees, as expressly permitted by FOIA; and

5. Grant Plaintiffs such other and further relief as this Court may deem just and proper.

DATED: January 27, 2020

Respectfully submitted,

By: ______________________________

D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
Email: vbaranetsky@revealnews.org

Attorney for Plaintiffs